IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 03-cv-00635-MSK-MJW

JON KURYLOWICZ, as surviving parent and heir of KATHERINE M. KURYLOWICZ, deceased, a minor,

    Plaintiff,

v.

TOYOTA MOTOR CORPORATION, a foreign corporation, and
TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,

    Defendants.

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
THE DEFENDANTS' MOTION FOR COSTS (#271) AND DIRECTING CLOSURE OF
THE CASE**

---

THIS MATTER comes before the Court on the Defendants' Motion for Actual Costs Pursuant to § 13-17-202, C.R.S. **(#271)**. Having considered the motion, the supplements **(#272, #273, #276)** thereto, the Plaintiff's response **(#274)**, and the reply **(#277)**, the Court

**FINDS** and **CONCLUDES** that:

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C § 1332.

### II. Factual and Procedural Background

On September 24, 2004, the Defendants made an offer of settlement to the Plaintiff. The offer states:

> Defendants Toyota Motor Corporation ("TMC") and
> Toyota Motor Sales U.S.A., Inc. ("TMS"), by and through their
> undersigned attorneys, John R. Trigg and Adam J. Goldstein of

Wheeler Trigg Kennedy LLP, submit the following Statutory Offer of Settlement pursuant to C.R.S. § 13-17-202 (2003).

TMC and TMS hereby collectively offer to pay Plaintiff the total sum of One Hundred Twenty Five Thousand Dollars ($125,000.00), said sum to include all interest, costs and attorneys' fees. TMS and TMC's Statutory Offer of Settlement is an unconditional offer to pay One Hundred Twenty Five Thousand Dollars ($125,000.00), in full satisfaction of all claims asserted against TMC and TMS by Plaintiff. This offer will remain open for fourteen (14) days from the date of service, as required by Colo. Rev. Stat. § 13-17-202(1)(a)(V).

This offer is made for the purposes specified in Colo. Rev. Stat. § 13-17-202 and is not to be construed either as an admission that TMC and/or TMS is liable in this action or that Plaintiff has suffered any damage. Evidence of this Offer of Settlement shall not be admissible, except in a proceeding to determine costs.

If this Offer of Settlement is not accepted by Plaintiff within fourteen (14) days, the offer shall be deemed rejected. If Plaintiff rejects TMC and TMS's Offer of Settlement and Plaintiff does not recover a final judgment against TMC and TMS in excess of the amount offered herein, then TMC and TMS shall be awarded their actual costs accruing after the date of this Offer of Settlement, to be paid by Plaintiff.

TMS and TMS reserve their right to also seek costs pursuant to Fed. R. Civ. P. 54, 28 U.S.C. §§ 1821, 1920-1923, Colo. Rev. Stat. § 13-16-105 or any other recognized basis.

The Plaintiff rejected this offer.

Following a 17-day jury trial, the jury returned a verdict in favor of the Defendants on all of the Plaintiff's claims. The Defendants now seek an award of "actual costs" pursuant to § 13-17-202, C.R.S. (2002),[1] which provides in relevant part:

> (1)(a) Notwithstanding any other statute to the contrary, in any civil action of any nature commenced or appealed in any court of record

---

[1] Unless otherwise noted, all references to § 13-17-202, C.R.S., are to the 2002 version of the statute.

>      in this state: . . .
>
>> (II) If the defendant serves an offer of settlement at any time more than ten days before the commencement of the trial that is rejected by the plaintiff and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff; . . .
>
> (b) For purposes of this section, "actual costs" shall not include attorney fees. . . .

The Plaintiff contends that the Defendants are not entitled to an award of costs under this statute.

The Defendants have broken down their requested costs into various categories: subpoena fees ($823.00), expert witness fees ($443,586.21), copying costs ($52,357.19), court reporter fees ($38,793.99), travel expenses ($6,429.12), exhibit preparation or presentation expenses ($47,958.44), and legal research expenses ($3,233.16). They have supplemented this with a request for expenses that they paid with respect to one of the Plaintiff's experts ($2,550.00). In all, the Defendants seek $595,731.11 in costs.

The Defendants also submitted a Bill of Costs to the Clerk of Court. The Clerk awarded them $2,790.95. Of this amount, $594.20 was awarded for "exemplification and copies of papers necessarily obtained for use in the case," and $2,196.75 was awarded for "costs incident to taking of depositions." The Defendants concede that they cannot recover this amount twice.

### III. Issue Presented

The Court must determine whether the Defendants should be awarded costs under § 13-17-202, C.R.S., and if so, in what amount.

### IV.  Analysis

**A.  Does a federal procedure prohibit an award of costs under § 13-17-202, C.R.S.?**

The Plaintiff argues that the Defendants' request for costs is "preempted and limited by applicable federal rules and statutes." The Defendants disagree.

The Plaintiff has not expressly asserted this argument under the *Erie*[2] doctrine and instead frames it only as a question of preemption and limitation.  However, the Court discerns in his argument two distinct challenges: (1) an *Erie* challenge, *i.e.*, that a federal procedure precludes application of the state statute; and (2) that a federal statute preempts the state statute.

The Court first considers the Plaintiff's *Erie* challenge.  In a diversity action such as this, the Court applies the substantive law of Colorado but, under the *Erie* doctrine, must apply federal procedural law.  *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539 (10th Cir. 1996) (citing *Erie*, 304 U.S. at 78, 92).  If a Federal Rule of Civil Procedure is directly on point, the Court must apply the federal rule in lieu of any state statute or rule.  *See Trierweiler*, 90 F.3d at 1539 (citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)). In determining whether a federal rule governs, the Court considers whether the scope of the rule is "sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of the state law." *See id.* at 1539-40 (citations and internal quotations and omitted).  If no federal rule is directly on point, then the Court applies "the policies underlying the *Erie* rule: 'discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *See id.*

Under the circumstances of this case, there is no Federal Rule of Civil Procedure which

---

[2] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)

4

directly collides with § 13-17-202, C.R.S. Rule 68, Fed. R. Civ. P., applies only when a plaintiff obtains a judgment in his, her or its favor. *See Delta Air Lines, Inc. v. August*, 450 U.S. 346, 351-52 (1981).[3] Because the Defendants in this case obtained a judgment on all claims, Rule 68 is not applicable.

There also is no direct conflict between Rule 54(d)(1), Fed. R. Civ. P. and § 13-17-202, C.R.S. *See Garcia v. Wal-Mart Stores, Inc.,* 209 F.3d 1170, 1176-77 (10th Cir. 2000). In *Garcia*, the Tenth Circuit considered whether the trial court erred in failing to award "actual costs" to a plaintiff under § 13-17-202. Applying the *Trierweiler-Hanna* framework, it concluded that Fed. R. Civ. P. 54(d) does not "necessarily conflict with an award of 'actual' costs." *See Garcia*, 209 F.3d at 1176. It then held that the trial court should have awarded costs to the plaintiff under § 13-17-202, C.R.S. *See id.* at 1178-79. It stated: "Those costs must be awarded by the district court pursuant to Colorado law to the extent they constitute 'costs other than attorneys' fees' under Fed. R. Civ. P. 54(d)(1) and are not preempted by a federal statute such as 28 U.S.C. § 1821, and to the extent, if at all, they constitute 'related non-taxable expenses' under Fed. R. Civ. P. 54(d)(2)." *See id.*

Because there is no conflict between a federal rule and the Colorado statute, the Court must engage in the relatively unguided *Erie* analysis. Although there is a reluctance to impose state procedures on a federal court, such consideration is not determinative of the *Erie* analysis. *See Trierweiler*, 90 F.3d at 1540. Instead, the policies underlying *Erie* (discouraging forum-

---

[3] In contrast, § 13-17-202, C.R.S. costs can be awarded to either a prevailing plaintiff or defendant. *See Hale v. Erickson*, 23 P.3d 1255 (Colo. App. 2001). Thus, there could be a circumstance in which Fed. R. Civ. P. 68 conflicts with the Colorado statute, *i.e,* when the plaintiff obtains a judgment in his, her or its favor in an amount less than the offer of settlement.

shopping and avoiding inequitable administration of the laws) may favor application of the state rule when the burden on a federal court is minor and the essential characteristics of the federal system are not altered by such application. *See id.* To further the policies of *Erie*, a court should aim to avoid an outcome in the litigation different from that which would have been obtained in state court. *See id.* It also should consider whether the policy embodied in the state rule or statute is "bound up" with a substantive right. *See id.* at 1541.

In order to discourage forum-shopping and to avoid the inequitable administration of the laws, the Court concludes that the Defendants may recover costs under § 13-17-202, C.R.S. The opposite conclusion would lead to an anomalous result in that a plaintiff could recover costs under the state statute, but a defendant could not. As the *Garcia* court recognized, failure to apply the Colorado statute could substantially alter the amount of money an unsuccessful plaintiff would have to pay a successful defendant, resulting in a significant difference in outcome between the state and federal courts. *See Garcia*, 209 F.3d at 1177. It undoubtedly would influence a plaintiff's choice of forum if he knew that by commencing an action in federal court as opposed to state court, his exposure to paying costs to a successful defendant would be far less than the defendant's exposure.

The Colorado statute is mandatory and evidences the Colorado legislature's intent to confer a substantive right to recover costs to particular parties. Applying the Colorado statute in this case imposes a minor to non-existent burden on this Court and does not alter any essential characteristics of the federal system. Therefore, the Court concludes that the *Erie* doctrine does not preclude recovery of costs by the Defendants under § 13-17-202, C.R.S., to the extent that such costs are not preempted by federal statutory law.

**B. Does federal law preempt an award of expert witness fees?**

The Plaintiff argues that the Defendants' request for expert witness fees under the Colorado statute is preempted by 28 U.S.C. § 1920(3) and 28 U.S.C. §§ 1821(b) & ©.  The Defendants respond that there is no preemption.

The Supremacy Clause to the United States Constitution vests Congress with the authority to pass legislation which preempts state law.  *See United States v. Vasquez-Alvarez*, 176 F.3d 1294, 1297 (10th Cir. 1999).  However, there is a basic assumption that ordinarily Congress does not intend to displace state law, thus Congress' intent to do so must be clear.  *See id.*

Federal preemption can be either express or implied.  *See id.*  It is express when Congress specifically provides that state law is to be preempted.  *See id.*  There are two types of implied preemption: (1) when state law regulates conduct in a field Congress intended the Federal Government to occupy exclusively (known as field preemption); and (2) when state law actually conflicts with federal law (known as conflict preemption).  *See id.* at 1297 n.3; *see also Choate v. Champion Home Builders Co.*, 222 F.3d 788, 795 (10th Cir. 2000).  Field preemption occurs when "the federal regulatory scheme is so pervasive as to create the inference that Congress meant to leave no room for the states to supplement it[.]" *See Vasquez-Alvarez*, 176 F.3d at 1297 n.3.  In contrast, conflict preemption occurs when "compliance with both state and federal law is impossible or state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]" *See id.*

The Plaintiff appears to argue that § 13-17-202, C.R.S. is impliedly preempted to the

7

extent that it authorizes an award of expert witness fees,[4] although he does not specify the type of implied preemption he believes should apply. In support of his argument, the Plaintiff relies upon *Henkel v. Chicago, S.P., M. & O.R. Co.,* 284 U.S. 444 (1932), *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987), and several Tenth Circuit cases.

In *Henkel*, the Supreme Court addressed whether a plaintiff who prevailed on a Federal Employers' Liability Act claim could obtain an award of expert witness fees under state law. It concluded that such costs could not be taxed in excess of the amounts set forth in federal statutes governing witness fees. It reasoned that Congress had "definitely prescribed its own requirement with respect to the fees of witnesses" and "dealt with the subject comprehensively," making no exception for expert witness fees. *See Henkel*, 284 U.S. at 447. It therefore stated that "[Congress'] legislation must be deemed controlling, and excludes the application in the federal courts of any different state practice." *See id.*

In *Crawford*, decided more than 55 years after *Henkel*, the Supreme Court addressed whether plaintiffs who prevailed on federal antitrust and discrimination claims could obtain reimbursement for expert witness fees exceeding the limit of 28 U.S.C. § 1821(b). It concluded that 28 U.S.C. § 1920 "embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party[.]" *See Crawford*, 482 U.S. at 440. It then highlighted § 1920(3), which authorizes witness fees to be taxed as costs, and stated that such witness fees are defined in 28 U.S.C. § 1821. *See id.* The Supreme Court then held "that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's

---

[4] An award of costs under § 13-17-202, C.R.S. includes reasonable expert witness fees. *See Underwood v. Dillon Companies, Inc.,* 936 P.2d 612, 616 (Colo. App. 1997).

witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and §1920." *See id.* at 445.

Neither *Henkel* nor *Crawford* were diversity cases, and neither involved any analysis of preemption doctrine. However, in *Garcia,* the Tenth Circuit explained that under *Crawford*, state laws authorizing an award of expert witness fees are preempted as to the amount of an award by 28 U.S.C. §§ 1821 and 1920. *See Garcia,* 209 F.3d at 1177 n.5, 1179. Although the Tenth Circuit did not specify what type of preemption this was, it appears to be in the nature of conflict preemption. Therefore, the amount of expert witness fees to be awarded to the Defendants is limited to those expressly allowed by 28 U.S.C. §1821.

**C.  Does the offer of settlement satisfy § 13-17-202, C.R.S.?**

The Plaintiff argues that the Defendants' offer of settlement does not fall within the provisions of §13-17-202 because it contained non-monetary conditions, because its conditions were contrary to §13-17-202(1)(a)(IV), and because the Defendants reserved their right to seek costs under other statutory provisions and rules. The Defendants dispute this.

There is no prescribed form for an offer of settlement under § 13-17-202, C.R.S. *See Dillen v. HealthOne, L.L.C.,* 108 P.3d 297, 301 (Colo. App. 2004), *cert. granted in part*, 2005 WL 333678 (Colo. Feb. 14, 2005). However, an offer of settlement which imposes nonmonetary conditions may fall outside the scope of the statute. *See Tallitsch v. Child Support Services, Inc.,* 926 P.2d 143, 148-49 (Colo. App. 1996). For instance, if the offer specifies how settlement proceeds are to be applied, includes assumption of risk terms, imposes hold harmless obligations, or mandates confidentiality, the statute does not apply. *See id.*; *see also Martin v. Minnard*, 862 P.2d 1014, 1019 (Colo. App. 1993). In addition, an offer of settlement which specifically and

9

unequivocally excludes costs from being awarded does not fall within the purview of the statute. *See Aberle v. Clark*, 916 P.2d 564, 565 (Colo. App. 1995).

The Defendants' offer of settlement contained no non-monetary conditions. It did not specify how settlement proceeds could be applied, include assumption of risk terms, impose hold harmless obligations, or mandate confidentiality. It simply specified that the offer was not an admission of liability by either Defendant or an admission that the Plaintiff has suffered any damage.

The Plaintiff contends that because the offer of settlement specified that acceptance would not result in an admission of liability, it runs afoul of § 13-17-202(1)(a)(IV). The Court disagrees. Pursuant to § 13-17-202(1)(a)(IV), "If an offer of settlement is accepted within ten days after service of the offer, either party may file the offer, written notice of acceptance, and proof of service with the court, and the clerk shall enter judgment upon the accepted offer of settlement." Parties can enter into a settlement agreement which leads to the entry of judgment without admitting to liability.

The Plaintiff finally contends that the offer of settlement is defective because the Defendants reserved their right to seek costs under other statutes and rules. The Court rejects this contention. Nothing in § 13-17-202, C.R.S., requires an offer of settlement to be so limited. Therefore, the Defendants are entitled to recover actual costs under § 13-17-202, C.R.S.

**D.  What costs should be awarded to the Defendants?**

The Plaintiff argues that some of the requested costs are unreasonable. The Defendants contend that all costs were reasonably incurred given the complexity of the issues presented at trial and their potential exposure in terms of liability.

A trial court lacks discretion to deny an award of costs under § 13-17-202. *See Bennett v. Hickman*, 992 P.2d 670, 673 (Colo. App. 1999). However, it is within the trial court's discretion to determine the amount of costs to be awarded. *See id.*

Section 13-17-202 allows only for an award of actual costs which are reasonably incurred by a party. *See Scholz v. Metro. Pathologists, P.C.*, 851 P.2d 901, 910 (Colo. 1993). If requested by a party, an evidentiary hearing must be held to assess the reasonableness of the costs sought. *See Dillen,* 108 P.3d at 302. However, "a party who fails to make a timely request waives the right to a hearing on the factual basis for the award." *See Foster*, 6 P.3d at 796 (citing *In re Marriage of Aldrich*, 945 P.2d 1370, 1379-80 (Colo. 1997)). In other words, the failure to request a hearing is tantamount to acquiescence to a determination on the record submitted. *See id.; see also In re Marriage of Aldrich*, 945 P.2d at 1379-80; *Schmidt Const. Co. v. Becker-Johnson Corp.*, 817 P.2d 625, 628 (Colo. App. 1991) (request for an evidentiary hearing made after the court ruled was untimely). Here, no party has requested a hearing to determine the reasonableness of the Defendants' costs. Therefore, the parties have acquiesced to having the Court determine this issue based upon the record submitted, without a hearing. *See Foster,* 6 P.3d at 796.

### 1. Expert Witness Fees

The Court has already ruled that the Defendants' request for witness fees is limited to the amounts specified in 28 U.S.C. § 1821. This means that for each witness, expert or lay, the Defendants may recover $40 per day for a witness' attendance at a court hearing, trial or

deposition, and mileage for travel in a privately owned vehicle,[5] among other expenses not relevant here.

The Defendants also seek $629 in witness fees and mileage reimbursement. The Plaintiff does not contend that these amounts are unreasonable. Therefore, the Court finds that such amounts were reasonably incurred in preparation for trial and the Defendants are entitled to recover them.

The Defendants also seek to recover $2,550 in expenses incurred by Jerry Wallingford, who was one of the Plaintiff's expert witnesses. The Plaintiff has not objected to these expenses. Therefore, the Court finds that these expenses were reasonably incurred and the Defendants may recover them.

**2. Trial Subpoenas**

The Defendants seek to recover $194 for service of trial subpoenas. The Plaintiff does not contend that this amount is unreasonable or otherwise oppose this request. Therefore, the Court finds that this amount was reasonably incurred in preparation for trial.

**3. Copies**

The Defendants seek to recover $52,357.19 for photocopies of trial exhibits and copies of DVDs, CDs, and videos. The Plaintiff opposes the bulk of this request as unreasonable. He contends that the Defendants' itemization of copying costs "appears to involve repetitive, duplicative or unnecessary copies or charges[.]" He further asserts that he offered to exchange exhibits with the Defendants digitally, but the Defendants refused. The Defendants simply

---

[5] The mileage reimbursement rate is dependent upon when the travel occurred. At the time of the trial, the mileage reimbursement rate was $0.405 per mile.

respond that given the complexity of this case and their potential liability, such costs were reasonably incurred.

The Defendants bear the burden of proving reasonableness of the expense, but their itemization and invoices fail to provide any information that constitutes a justification in terms of the nature or complexity of the matter. Indeed, all of the evidence presented at trial was digitized, thus although the Court does not doubt that some copying expenses likely were reasonably incurred, it is difficult to guess at what charges are appropriate. In addition, some of the $52,357.19 has already been awarded to the Defendants as taxable costs. In their Bill of Costs, the Defendants sought to recover $594.20 "for exemplification and copies of papers necessarily obtained for use in the case." The Clerk of Court has awarded them this amount. Since there is no explanation as to how the $594.20 overlaps with the Defendants's current request for costs, the Court assumes that there is a complete overlap. In the absence of a request to present additional evidence on this issue, the record is inadequate to make an award. *See Foster,* 6 P.3d at 796. As a consequence, this request is denied.

### 4. Depositions

The Defendants seek to recover $7,637.98 for depositions and related expenses. The Plaintiff does not assert that this amount is unreasonable or otherwise oppose this request. Therefore, the Court finds that such amount was reasonably incurred in preparation for trial and the Defendants are entitled to recover it. However, because the Defendants have already recovered $2,196.75 in connection with their Bill of Costs, the Court reduces the recoverable amount to $5,441.23.

### 5. Travel Expenses

The Defendants seek to recover $6,429.12 in travel expenses incurred in connection with the taking of depositions, the Rule 702 hearings, and video work. The Plaintiff does not contend that these expenses were unreasonably incurred or otherwise oppose this request. Therefore, the Court finds that such amount was reasonably incurred in preparation for trial and the Defendants are entitled to recover it.

### 6.  Realtime and Daily Transcripts

The Defendants seek to recover $29,347.45 for twice-daily and realtime trial transcripts. The Plaintiff argues that such transcripts were a luxury, not a necessity, particularly given that the Defendants had multiple counsel present at trial, and therefore should not be awarded. The Defendants have not responded to this argument.

Again the record does not justify the award. Although twice-daily and realtime trial transcripts may have been a convenience to the Defendants, there is no evidence to establish that they were a necessity. The Defendants had several counsel as well as support staff present during the trial. No transcript was required for any appeal. Therefore, the Court finds that costs incurred in relation to the preparation of twice-daily and realtime trial transcripts are denied.

### 7. Other Hearing Transcripts

The Defendants seek to recover $3,734.22 for transcripts of hearings which occurred prior to trial. The Plaintiff does not contend that this amount is unreasonable or otherwise oppose this request. Because the Defendants reasonably could have required such transcripts to prepare for trial, the Court finds that this amount was reasonably incurred and the Defendants are entitled to recover it.

### 8. Exhibit Preparation

The Defendants seek to recover $47,958.44 in "exhibit preparation or presentation expenses." The Plaintiff objects to these expenses because they pertain to travel, meetings, parking, duplication, and other expenses which they contend could not have been reasonably incurred. The Defendants do not specifically respond to this objection.

There are eight entries falling into this category. Of these, the only expenses which this Court can categorically determine were reasonably incurred were: (1) the $57.50 spent on driving manuals used as trial exhibits; and (2) the $179 spent on exhibit stickers for trial exhibits.

The remaining six entries pertain to $47,721.94 in litigation support services provided by Trial Resources, Inc. to the Defendants. It has charged an hourly rate of $120 for organizing trial exhibits, attending hearings, the trial, and meetings with counsel, managing electronic exhibits, preparing for the attorneys' cross-examination of witnesses at trial, and other similar services. These are services which an attorney or an attorney's in-house support staff ordinarily would perform. Therefore, they might have been characterized as attorney fees or charges for paralegals, which cannot be recovered under § 13-17-202.

However, Trial Resources, Inc. also provided technical services to the Defendants including imaging, digitizing and preparing particular exhibits. Such services were reasonably provided in anticipation of trial, and the Defendants are entitled to recover costs for these services in the amount of $7,571.76.[6]

The Defendants also seek to recover $448.42 in hotel expenses incurred by Trial

---

[6] The Court notes that it has not awarded the Defendants photocopying costs for hard copies of their exhibits because they did not establish the reasonableness of such expenses. As a result, there is no duplication in awarding them costs for digitization.

Resources, Inc. The Court cannot find that these expenses were reasonably incurred based upon the Defendants' submissions. Invoices for Trial Resources, Inc. show that it has an address of 1070 Bannock Street in Denver. Therefore, on the record before the Court, the Defendants have not shown that any overnight cost was warranted.

The Defendants also seek to recover $48.00 in airport parking expenses and $80.00 in Courthouse parking expenses incurred by Trial Resources, Inc. The Court cannot determine whether the airport parking expenses were reasonably incurred, particularly given that Trial Resources, Inc. has an office in Denver. However, the Courthouse parking expenses were incurred at the time of trial, and the amount requested is in line with daily parking rates at public lots surrounding the Courthouse. Therefore, the Defendants may recover $80.00 in parking expenses.

### 9. Westlaw

The Defendants seek to recover $3,233.16 in legal research expenses for Westlaw research. The Plaintiff does not contend that this amount is unreasonable. The Court finds that such expenses were reasonably incurred.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Actual Costs Pursuant to § 13-17-202, C.R.S. **(#271)** and the supplements **(#272, #273, #276)** thereto are **GRANTED IN**

**PART** and **DENIED IN PART**. The Defendants are awarded actual costs in the amount of $30,098.99.

  **IT IS FURTHER ORDERED** that the Clerk close this case.

Dated this 15th day of December, 2005

            **BY THE COURT:**

            Marcia S. Krieger
            United States District Judge